**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Roslyn Langley, Robert R-Kell Pressley, and Raeshawn Tyrek Langley, individually and as Personal Representatives of the Estate of Robert Langley, | ) ) ) ) ) | 2:22-cv-1275-RMG-MGB |
| Plaintiffs, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| Officer Cassandra A. Dollard, Town of Hemingway, South Carolina Criminal Justice Academy, and Williamsburg, County | ) ) ) ) ) | **(Jury Trial Demanded)** |
| Defendants. | ) ) ) | |

## NATURE OF THE CASE

Plaintiff files this Complaint by and through undersigned counsel of record against the above-named Defendants Officer Cassandra A. Dollard, Town of Hemingway, South Carolina Criminal Justice Academy, and Williamsburg County for negligent, reckless, and intentional conduct leading to the unauthorized vehicular pursuit and subsequent killing of an unarmed Robert Langley on February 6, 2022. As a direct and proximate result of Defendants' conduct, Plaintiff sustained actual injuries and damages, and in support thereof alleges as follows:

## JURISDICTION, PARTIES, AND VENUE

1.      This action is an action for money damages brought pursuant to 42 U.S.C. § 1983, et seq., the Fourth and Fourteenth Amendments to the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina against Defendants.

2.     Subject matter jurisdiction is conferred upon the Court by 28 U.S.C. §§ 1331, 1367(a), (b), (c), (d), and 1343, and 28 U.S.C. §§ 2201 and 2202.

3.     Supplemental jurisdiction over state law claims is conferred upon the Court by 28 U.S.C. § 1367(a).

4.     Plaintiffs Roslyn Langley, Robert R-Kell Pressley, and Raeshawn Tyrek Langley are duly appointed personal representatives of the Estate of Robert Langley.  Plaintiffs were appointed the personal representatives of Robert Langley's estate by order of the Georgetown County Probate Court, dated March 30, 2022, in estate number 2022-ES-22-00074.

5.     At all times relevant to this Complaint, decedent Robert Langley ("Plaintiff," "decedent Robert Langley," "Mr. Langley) was 46 years old and a resident of Williamsburg County.

6.     Upon information and belief, at all times relevant to this complaint, Defendant Officer Cassandra A. Dollard ("Defendant Dollard", "Officer Dollard") was a resident of Williamsburg County, South Carolina, and was employed by the Hemingway Police Department, a branch of the Town of Hemingway.  At all times relevant to this complaint, Defendant Dollard acted under color of state law.

7.     At all times relevant to this complaint, Defendant Town of Hemingway, South Carolina has been a governmental entity established under the laws and constitution of the State of South Carolina, transacting and conducting business in Williamsburg County, South Carolina, and with a principal place of business in Williamsburg County, South Carolina.  As it relates to the underlying subject matter of this case, upon information and belief, Defendant Town of Hemingway operated by and through its servants, agents, and/or authorized representatives, and had actual knowledge of the actions and/or inactions of these authorized individuals.

8.      At all times relevant to this complaint, Defendant South Carolina Criminal Justice Academy ("Defendant SCCJA") has been a governmental agency in South Carolina, organized and existing under the privilege of the State of South Carolina, and operating and conducting business in Richland County, South Carolina and with a principal place of business in Richland County, South Carolina.

9.      At all times relevant to this complaint, Defendant Williamsburg County has been a state agency, governmental entity, or political subdivision of the State of South Carolina, transacting and conducting business in Williamsburg County, South Carolina and with a principal place of business in Williamsburg County, South Carolina.

10.      Venue is proper in the Charleston Division, as a substantial part of the events or omissions complained of occurred within Georgetown County, South Carolina.

11.      This action also arises pursuant to, and involves questions requiring the interpretation of the United States Constitution, and/or the laws and treaties of the United States.

12.       Jurisdiction and venue are therefore proper before this court pursuant to 28 U.S.C. § 1331, § 1367, and § 1391.

## FACTUAL ALLEGATIONS

### The Chase

13.      On February 6, 2022, Defendant Cassandra A. Dollard, a duly authorized officer and agent of Defendant Town of Hemingway, and while on duty, engaged Robert Langley in a vehicular pursuit through Williamsburg and Georgetown Counties, resulting in Langley crashing into a ditch, at which time she shot and killed Langley, who was unarmed, as he attempted to exit his vehicle.

14.    Upon information and belief, earlier that morning around 1:24 a.m., Robert Langley allegedly rolled through a stop sign in the Town of Hemingway.

15.    Upon information and belief, immediately following the alleged traffic violation, Defendant Dollard engaged in a high-speed chase of Langley, pursuing him on S.C. Highway 261.

16.    Upon information and belief, Defendant Dollard knowingly pursued Langley through Williamsburg County and into Georgetown County in contravention of S.C. Code Ann. § 17-13-40(A).[1]

17.    Upon information and belief, Defendant Dollard was communicating with Defendant Williamsburg County's Police Dispatch while in pursuit of Langley.

18.    Upon information and belief, Defendant Williamsburg County's Police Dispatch did not instruct Defendant Dollard to discontinue her high-speed chase of Langley, or that she did not have authority to continue pursuing Langley into Georgetown County.

19.    Upon information and belief, Langley ultimately crashed his vehicle into a ditch at the intersection of Schoolhouse Road and Choppee Road in Georgetown County, eight miles outside of Hemingway.

20.    Upon information and belief, Langley, who was unarmed, then attempted to exit the vehicle, but was shot one time in the chest by Defendant Dollard.

21.    Langley was not in possession of a weapon, and no weapons were found at the scene.

---

[1] "When the police authorities of a town or city are in pursuit of an offender for a violation of a municipal ordinance or statute of this State committed within the corporate limits, the authorities may arrest the offender, with or without a warrant, at a place within the corporate limits, at a place within the county in which the town or city is located, or at a place within a radius of three miles of the corporate limits."  S.C. Code Ann. § 17-13-40(A)

22.     Upon information and belief, after shooting Langley, Defendant Dollard did not render aid for several minutes after she shot Langley.

23.     Defendant Dollard eventually attempted to render aid to Langley and treat the bullet wound in his chest by performing chest compressions.

24.     Later that day, Langley ultimately succumbed to his injuries and died at Tidelands Georgetown Memorial Hospital.

### Defendant Dollard's History of Misconduct

25.     Upon information and belief, Defendant Dollard had a history of substandard performance and improper conduct, including hostility towards citizens, operating outside of her jurisdiction, and improper use of her firearm, leading to her termination from at least two separate law enforcement agencies.

26.     Upon information and belief, in 2002, Defendant Dollard was terminated from the Johnsonville Police Department for poor performance.

27.     Upon information and belief, in 2014, Defendant Dollard was terminated from the South Carolina State Transport Police for inappropriate, hostile, and dangerous conduct, including but not limited to:

    a.     Striking the vehicle of a mother and small child after becoming frustrated and visibly angry;

    b.     Failing to call in stops as required;

    c.     Failing to document encounters,

    d.     Failing to wear her issued body armor;

    e.     Failing to make proper charges against motorists;

    f.     Working outside of her assigned zone without prior approval;

5

      g.     Using her blue lights to clear traffic for convenience rather than as part of law enforcement activity;

      h.     Discharging her duty weapon and striking a dog while jogging off duty; and

      i.     Failing to report the discharge of her weapon while off duty.

**Defendant Dollard Was Recertified Despite Her History of Misconduct**

28.     Upon information and belief, Defendant SCCJA failed to document or record any instances of misconduct involving Defendant Dollard.

29.     Upon information and belief, Defendant SCCJA recertified Defendant Dollard as a law enforcement officer after she completed the recertification process, which includes a background check and work history review.

**Defendant Dollard Was Hired Despite Her History of Misconduct**

30.     Upon information and belief, the Hemingway Police Department is understaffed and struggles to recruit, only retaining two (2) active officers following the termination of Defendant Dollard.[2]

31.     Upon information and belief, Defendant Town of Hemingway reviewed Defendant Dollard's prior work history and conducted a background check before hiring her as an officer with the Hemingway Police Department. Thus, Defendant Town of Hemingway hired Defendant Dollard with knowledge of her prior substandard work history, inappropriate conduct, and hostility toward civilians.

32.     Upon information and belief, Defendant Town of Hemingway engaged in the practice of disregarding prior instances of inappropriate behavior when hiring officers to make up for recruiting and staffing issues.

---

[2] https://www.myrtlebeachonline.com/news/local/article258380453.html

33.     Upon information and belief, Defendant Town of Hemingway did not require Defendant Dollard to engage in any additional training despite knowledge of her history of misconduct, nor did Defendant Town of Hemingway take any steps to ensure that Defendant Dollard was adequately supervised.

## JOINT AND SEVERAL LIABILITY

34.     Defendants are jointly and severally liable for the damages and injuries sustained by Robert Langley, as Defendants' individual and collective actions and omissions actually and proximately caused his death.  Plaintiff is entitled to damages pursuant to the laws of the State of South Carolina and Constitution of the United States of America, including but not limited to the following:

      a.     Compensatory, actual, and consequential damages;

      b.     Loss of past and future support and services, companionship, society and support and the cost of past medical care;

      c.     Loss of future earnings; and

      d.     Any and all other and further relief as this Court may deem appropriate including post-judgment interest.

## COUNT I
## VIOLATION OF UNITED STATES CONSTITUTION, AMENDMENT IV, 42 U.S.C. § 1983, FOR THE USE OF EXCESSIVE FORCE – DEFENDANT DOLLARD

35.     Plaintiff hereby realleges the preceding paragraphs as if repeated verbatim herein.

36.     This action is brought against Defendant Dollard, in her individual capacity, pursuant to the Fourth Amendment to the United States Constitution as incorporated through the Fourteenth Amendment, for Defendant's violations of 42 U.S.C. § 1983.

37.     At all times material hereto, Defendant Dollard was an employee and/or agent of Defendant Town of Hemingway and acting within the course and scope of her employment, under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant Town of Hemingway.

38.     As set forth in this complaint, on the morning of February 6, 2022, Defendant Dollard used unnecessary, excessive, and deadly force on Robert Langley, an unarmed man.  The amount of force used by Defendant Dollard was objectively unreasonable in light of the facts and circumstances confronting her.

39.     By the time of this incident, the laws prohibiting Defendant's unconstitutional use(s) of force were clearly established under the Fourth Amendment of the United States Constitution.

40.     Defendant Dollard knew or should have known, and every reasonable officer in her position would have concluded, that the force used against Robert Langley was excessive, unjustifiable, and unlawful.

41.     Defendant Dollard had actual knowledge that her use of force against Langley was in violation of policy.

42.     In her capacity as a law enforcement officer, and upon information and belief, Defendant Dollard has a history of abusing her authority and using excessive force against citizens in South Carolina, depriving citizens of their bodily integrity.  Defendant Dollard had not been trained in Crisis Intervention Training, the proper use of force, de-escalation techniques, and/or non-lethal uses of forces, or in the event of such training, disregarded the training, and failed to apply these principles in using force against Robert Langley.

43.     At the time of this incident, Robert Langley was an unarmed man who fled after failing to stop at a stop sign.  With inadequate information to support the use deadly force, Defendant Dollard nevertheless shot Langley immediately as he tried to exit his crashed vehicle.

44.     Upon information and belief, throughout the entire incident, Defendant Dollard did not attempt to use a single de-escalation technique.

45.     Upon information and belief, Defendant Dollard did not attempt to determine whether Robert Langley was armed or whether he posed any danger to her before firing upon him.

46.     As a direct and proximate result of Defendant Dollard's acts, omissions, and clear use(s) of excessive force, Defendant Dollard deprived Robert Langley of the rights guaranteed to him by the Fourth Amendment of the United States Constitution, in particular, depriving him of the right to be free of excessive force and of bodily integrity.

47.     Plaintiff is entitled to damages pursuant to the laws of South Carolina and the Constitution of the United States of America, including but not limited to the following:

    a.     Compensatory, actual, and consequential damages;

    b.     Costs of this action;

    c.     Reasonable attorneys' fees and costs to Plaintiffs on Federal 1983 Counts pursuant to 42 U.S.C. § 1988;

    d.     Loss of past and future support and services, companionship, society, and support, and the cost of past medical care;

    e.     Loss of future earnings; and

    f.     Any and all other and further relief as this Court may deem appropriate including pre and post judgment interest.

## COUNT II
## VIOLATION OF THE UNITED STATES CONSTITUTION, AMENDMENT IV,

**42 U.S.C. § 1983, FOR UNREASONABLE SEIZURE – DEFENDANT DOLLARD**

48.    Plaintiff hereby realleges the preceding paragraphs as if repeated verbatim herein.

49.    This is an action brought against Defendant Dollard in her individual capacity, pursuant to the Fourth Amendment to the United States Constitution as incorporated through the Fourteenth Amendment, for Defendant's violations of 42 U.S.C. § 1983.

50.    At all times material hereto, Defendant Dollard was an employee and/or agent of Defendant Town of Hemingway and acting within the course and scope of her employment, under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant Town of Hemingway.

51.    As set forth in this complaint, on the morning of February 6, 2022, Defendant Dollard unreasonably seized Robert Langley by holding him at gunpoint, telling him he may not exit a crashed vehicle, and then immediately shooting him with her service weapon when he did.

52.    Although Langley had only committed a traffic violation and Defendant Dollard had no authority to pursue or seize Langley outside of Williamsburg County.  The seizure of Langley by Defendant Dollard was objectively unreasonable in light of the facts and circumstances confronting her.

53.    By the time of this incident, the laws prohibiting Defendant Dollard's unconstitutional seizure were clearly established under the Fourth Amendment of the United States Constitution.

54.    Defendant Dollard knew or should have known, and every reasonable officer in her position would have concluded, that the seizure of Robert Langley was excessive, unjustifiable, and unlawful.

55.    Defendant Dollard had actual knowledge that her high-speed pursuit of Langley for a minor traffic violation was in violation of policy.

10

56.     Defendant Dollard did not have reasonable suspicion that Robert Langley had committed any crime other than a traffic violation, nor reasonable suspicion that Langley was armed and dangerous, nor did Defendant Dollard have statutory authority to seize Langley outside Williamsburg County.

57.     Prior to seizing Robert Langley, Defendant Dollard engaged him for running a stop sign, pursued him through Williamsburg County, and left her authorized jurisdiction to pursue him into Georgetown County.

58.     No additional underlying offense has ever been alleged against Robert Langley, and Defendant Dollard did not have reasonable suspicion that Langley was engaged in criminal activity or that he was armed and dangerous.

59.     As a direct and proximate result of Defendant Dollard's acts, omissions, and unlawful seizure, Defendant Dollard deprived Robert Langley of the rights guaranteed to him by the Fourth Amendment of the United States Constitution, in particular, depriving him of the right to be free of unreasonable seizure.

60.     Plaintiff is entitled to damages pursuant to the laws of the United States of America and the Constitution of the United States of America, including but not limited to the following:

    a.     Compensatory, actual, and consequential damages;

    b.     Costs of this action;

    c.     Reasonable attorneys' fees and costs to Plaintiffs on Federal 1983 Counts pursuant to 42 U.S.C. § 1988;

    d.     Loss of past and future support and services, companionship, society and support, and the cost of past medical care;

    e.     Loss of future earnings; and

    f.      Any and all other and further relief as this Court may deem appropriate including pre and post-judgment interest.

## COUNT III
## VIOLATION OF THE UNITED STATES CONSTITUTION, AMENDMENT XIV, 42 U.S.C. § 1983, FOR THE FAILURE TO RENDER AID – DEFENDANT DOLLARD

61.    Plaintiff hereby realleges the preceding paragraphs as if repeated verbatim herein.

62.    This is an action brought against Defendant Dollard in her individual capacity, pursuant to the Fourteenth Amendment to the United States Constitution for Defendant's violations of 42 U.S.C. § 1983.

63.    At all times material hereto, Defendant Dollard was an employee and/or agent of Defendant Town of Hemingway and acting within the course and scope of her employment, under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant Town of Hemingway.

64.    As set forth in this complaint, on the morning of February 6, 2022, Defendant Dollard unreasonably shot Robert Langley in the chest and failed to render aid when she did not immediately attempt to provide assistance. Defendant Dollard's failure to render aid to Robert Langley constitutes a deliberate indifference to Langley's serious medical needs.

65.    By the time of this incident, the laws prohibiting Defendant Dollard's failure to render aid were clearly established under the Fourteenth Amendment of the United States Constitution.

66.    Defendant Dollard knew or should have known, and every reasonable officer in her position would have concluded, that the failure to render aid to Robert Langley was cruel, unusual, and unlawful.

67.     Prior to her failure to render aid, Defendant Dollard shot Robert Langley in the chest, thereby establishing a special duty to come to his aid.

68.     Defendant Dollard faced no danger in rendering aid to Robert Langley, as he was unarmed and incapacitated, and Defendant Dollard was the only person who could have provided immediate aid to Langley at the scene.

69.     Upon information and belief, Defendant Dollard had not been trained in first aid, or in the event of such training, disregarded the training, and failed to apply these principles in failing to immediately render aid to Robert Langley and in failing to properly treat his bleeding chest wound.

70.     As a direct and proximate result of Defendant Dollard's acts, omissions, and failure to render aid, Defendant Dollard deprived Robert Langley of the rights guaranteed to him by the Fourteenth Amendment of the United States Constitution, in particular, depriving him of the right to be free of deliberate indifference to serious medical needs.

71.     Plaintiff is entitled to damages pursuant to the laws of the United States of America and the Constitution of the United States of America, including but not limited to the following:

   a.     Compensatory, actual, and consequential damages;

   b.     Costs of this action;

   c.     Reasonable attorneys' fees and costs to Plaintiffs on Federal 1983 Counts pursuant to 42 U.S.C. § 1988;

   d.     Loss of past and future support and services, companionship, society and support, and the cost of past medical care;

   e.     Loss of future earnings; and

f.     Any and all other and further relief as this Court may deem appropriate including pre and post-judgment interest.

**COUNT IV**
**GROSS NEGLIGENCE, PURSUANT TO THE SOUTH**
**CAROLINA TORT CLAIMS ACT, S.C. CODE ANN. § 15-78-40**
**– DEFENDANT TOWN OF HEMINGWAY**

72.     Plaintiff hereby realleges the paragraphs from the introduction through paragraph 33 as though repeated verbatim herein.

73.     Plaintiff brings this action for gross negligence against Defendant Town of Hemingway pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10, *et seq*.

74.     At all times relevant to this complaint, Defendant Dollard was an employee and or/agent of Defendant Town of Hemingway, and acting within the course and scope of its employment, in furtherance of its interests, and with its knowledge and consent.

75.     Defendant Town of Hemingway is liable for the actions and omissions of its employees and/or agents that gave rise to this action, including the actions of Defendant Dollard.

76.     Defendant Town of Hemingway by and through its employees and agents, owed a duty to Robert Langley, including the duty to act in a prudent and reasonable manner with regard to his health and safety, and a duty to ensure that Langley, in interacting with agents of Defendant Town of Hemingway remained free from excessive and unlawful force.  Defendant Town of Hemingway also owed a ministerial duty to provide responsible and effective operations of its police department, and to establish proper policies, customs, and regulations of its police department.  Defendant Town of Hemingway also owed legal duty to hire appropriate candidates as officers, to supervise its officers, discipline said officers and retain only those fit for duty, to properly train and retrain said officers, to properly correct and remediate any known deficiencies within its officers, and to ensure officers used only lawful force.

14

77.     Upon information and belief, prior to hiring Defendant Dollard, Defendant Town of Hemingway reviewed her background check, prior work history, and instances of misconduct. Despite having actual or constructive notice of Defendant Dollard's prior history of misconduct, including instances of operating outside her jurisdiction, hostility towards civilians, and inappropriate discharge of her firearm, Defendant Town of Hemingway hired Defendant Dollard and thereafter permitted her to work unsupervised.

78.     Defendant Town of Hemingway's failure to consider Defendant Dollard's prior history of misconduct before employing her as an officer, and its failure to appropriately supervise her despite actual or constructive knowledge of such history constitutes a breach of Defendant Town of Hemingway's duties owed to the citizens of Williamsburg County, including Robert Langley.

79.     Defendant Town of Hemingway's failure to train, retrain, or otherwise attempt to remediate Defendant Dollard's practice of misconduct despite actual or constructive knowledge of such history constitutes a breach of Defendant Town of Hemingway's duties owed to the citizens of Williamsburg County, including Robert Langley.

80.     Defendant Town of Hemingway knew or should have known of the dangers posed by its failures illustrated in this complaint, including the failures to hire officers without a history of misconduct, properly train, retrain, and supervise its officers, negligently retaining officers, and using unnecessary and excessive force, and that these said actions were reckless and or constituted the total absence of care likely to result in violations of citizens' rights, and as such were reasonably foreseeable.

81.     Defendant Town of Hemingway, by and through its duly authorized employees, owed a duty to Robert Langley to be reasonable in its law enforcement conduct.  Defendant Town

15

of Hemingway, by and through Defendant Dollard, breached duties owed to Langley by engaging him in a high-speed chase following a traffic violation, and shooting him while he attempted to flee, all while failing to engage in a single de-escalation tactic. Langley, who was unarmed did not pose a threat to Defendant Dollard as he was attempting to flee. Any potentially perceivable threat was created by Defendant Dollard's grossly negligent actions.

82.     Defendant Town of Hemingway's actions and omissions, by and through its authorized agents, were unreasonable, constituted the total absence of care, and breached duties owed to Robert Langley, and actually and proximately contributed to and/or caused the death of Langley.

83.     Defendant Town of Hemingway's actions and omissions as described above, by and through its authorized agents, were in violation of its own policies.

84.     Each incident of force used in this matter constitutes a separate occurrence, including:

a.     Chasing Robert Langley's vehicle into a ditch; and

b.     Shooting Robert Langley in the chest and killing him.

85.     Plaintiff is entitled to damages pursuant to the laws of South Carolina and the Constitution of the United States of America, including but not limiting to the following:

a.     Compensatory, actual, and consequential damages;

b.     Loss of past and future support and services, companionship, society and support, and the cost of past medical care;

c.     Loss of future earnings; and

d.     Any and all other and further relief as this Court may deem appropriate including post-judgment interest.

16

## COUNT V
## WRONGFUL DEATH PURSUANT TO S.C. CODE ANN. § 15-51-10
## – DEFENDANT TOWN OF HEMINGWAY

86.     Plaintiff hereby realleges the paragraphs from the introduction through paragraph 33, and paragraph 72 through paragraph 85 as though repeated verbatim herein.

87.     Plaintiff brings this action pursuant to S.C. Code Ann. § 15-51-10, *et seq*. on behalf of the statutory heirs of Robert Langley, for the wrongful death of Mr. Langley, who died on February 6, 2022.

88.     The death of Mr. Langley was caused directly and proximately by Defendant Town of Hemingway's grossly negligent, willful and wanton conduct, set forth more fully herein.

89.     As a direct and proximate result of Defendants' conduct, the beneficiaries of Robert Langley have been damaged, and suffered the loss of Mr. Langley's services, support, income, society, companionship, love, and/or affection.

90.     Plaintiff is therefore entitled to a judgment against Defendant Town of Hemingway, and for such actual and consequential damages in an amount to be determined by a jury trial.

## COUNT VI
## SURVIVAL PURSUANT TO S.C. CODE ANN. § 15-5-90
## – DEFENDANT TOWN OF HEMINGWAY

91.     Plaintiff hereby realleges the paragraphs from the introduction through paragraph 33, and paragraph 72 through paragraph 90 as though repeated verbatim herein.

92.     Robert Langley's estate has incurred funeral and related expenses as a direct and proximate result of the grossly negligent, willful and wanton conduct of Defendant Town of Hemingway, set forth more fully herein.

93.     As a direct and proximate result of Defendant Town of Hemingway's conduct, set forth more expressly above, Robert Langley suffered grievous bodily injuries, physical pain and

suffering, and incurred medical expenses prior to his death, and his estate is entitled to an award of actual damages in an amount to be determined through a trial of this matter.

## COUNT VII
## GROSS NEGLIGENCE, PURSUANT TO THE SOUTH CAROLINA
## TORT CLAIMS ACT, S.C. CODE ANN. § 15-78-40 & § 15-78-60(12)
## – DEFENDANT SCCJA

94.     Plaintiff hereby realleges the paragraphs from the introduction through paragraph 33 as though repeated verbatim herein.

95.     Plaintiff brings this action for gross negligence against Defendant SCCJA pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10, *et seq*

96.     At all times relevant to this complaint, Defendant Dollard was operating with a law enforcement certification obtained through Defendant SCCJA, and subsequent to recertification at SCCJA.

97.     Defendant SCCJA owed a duty to Robert Langley, including the duty to act in a prudent and reasonable manner with regard to his health and safety, a duty to ensure that Langley, in interacting with certified law enforcement officers remained free from excessive and unlawful force.  Defendant SCCJA also owed a ministerial duty to provide responsible and effective operations of its certification program, to document incidents of officer misconduct, and to establish protocols to ensure that officers with a history of misconduct are not certified and/or recertified.  Defendant SCCJA also owed legal duty to certify appropriate candidates as officers, to refuse certification to candidates with a history of misconduct, to properly train and retrain officers, to properly correct and remediate any known deficiencies within officers, and to ensure officers were properly instructed on the use of lawful force.

98.     Upon information and belief, prior to recertifying Defendant Dollard, Defendant SCCJA reviewed her background check, prior work history, and instances of misconduct.  Despite

having actual or constructive notice of Defendant Dollard's prior history of misconduct, including instances of operating outside her jurisdiction, hostility towards civilians, and inappropriate discharge of her firearm, Defendant SCCJA recertified Defendant Dollard as a law enforcement officer and failed to document such instances of misconduct.

99.     Defendant SCCJA's failure to consider Defendant Dollard's prior history of misconduct before recertifying her as a law enforcement officer, and its failure to document her instances of misconduct despite actual or constructive knowledge of such history constitutes a breach of Defendant SCCJA's duties owed to the citizens of South Carolina, including Robert Langley.

100.    Defendant SCCJA knew or should have known of the dangers posed by its failures illustrated in this complaint, including the failures to refuse certification to officers with a history of misconduct, to properly train and retrain officers with a history of deficient performance/conduct, failing to document instances of misconduct, and failing to adequately educate officers on the use unnecessary and excessive force, and that said actions were reckless and or constituted the total absence of care likely to result in violations of citizens' rights, and as such were reasonably foreseeable.

101.    Defendant SCCJA, owed a duty to Robert Langley to be reasonable in its law enforcement certification and to refuse certification to officers with a history of misconduct. Defendant SCCJA breached duties owed to Langley by recertifying Defendant Dollard despite her history of misconduct and aggressive behavior, failing to record Defendant Dollard's instances of misconduct, and failing to adequately train Defendant Dollard on the lawful use of force. Defendant Dollard's lack of training and history of misconduct led to her decisions to engage

Langley in a high-speed chase over a traffic violation, and to shoot Langley without first attempting to determine whether Langley was armed.

102.     Defendant SCCJA's actions and omissions were unreasonable, constituted the total absence of care, and breached duties owed to Robert Langley, and actually and proximately contributed to and/or caused the death of Langley.

103.     Each incident of force used in this matter constitutes a separate occurrence, including:

a.     Chasing Robert Langley's vehicle into a ditch; and

b.     Shooting Robert Langley in the chest and killing him.

104.     Plaintiff is entitled to damages pursuant to the laws of South Carolina and the Constitution of the United States of America, including but not limiting to the following:

a.     Compensatory, actual, and consequential damages;

b.     Loss of past and future support and services, companionship, society and support, and the cost of past medical care;

c.     Loss of future earnings; and

d.     Any and all other and further relief as this Court may deem appropriate including post-judgment interest.

## COUNT VIII
## WRONGFUL DEATH PURSUANT TO S.C. CODE ANN. § 15-51-10 – DEFENDANT SCCJA

105.     Plaintiff hereby realleges the paragraphs from the introduction through paragraph 33, and paragraph 94 through paragraph 104 as though repeated verbatim herein.

106.    Plaintiff brings this action pursuant to S.C. Code Ann. § 15-51-10, *et seq*. on behalf of the statutory heirs of Robert Langley, for the wrongful death of Mr. Langley, who died on February 6, 2022.

107.    The death of Robert Langley was caused directly and proximately by Defendant SCCJA's grossly negligent, reckless, willful and wanton conduct, set forth more fully herein.

108.    As a direct and proximate result of Defendant SCCJA's conduct, the beneficiaries of Robert Langley have been damaged, and suffered the loss of Mr. Langley's services, support, income, society, companionship, love, and/or affection.

109.    Plaintiff is therefore entitled to a judgment against Defendant SCCJA, and for such actual and consequential damages in an amount to be determined by a jury at trial.

## COUNT IX
## SURVIVAL PURSUANT TO S.C. CODE ANN. § 15-5-90
## – DEFENDANT SCCJA

110.    Plaintiff hereby realleges the paragraphs from the introduction through paragraph 33, and paragraph 94 through paragraph 109 as though repeated verbatim herein

111.    Robert Langley's estate has incurred funeral and related expenses as a direct and proximate result of the gross negligence, recklessness, willful and wantonness of Defendant SCCJA, described herein.

112.    As a direct and proximate result of Defendant SCCJA's conduct, set forth more expressly above, Robert Langley suffered grievous bodily injuries, physical pain and suffering, and incurred medical expenses prior to his death, and his estate is entitled to an award of actual damages in an amount to be determined through a trial of this matter.

## COUNT X
## GROSS NEGLIGENCE, PURSUANT TO THE SOUTH CAROLINA
## TORT CLAIMSACT, S.C. CODE ANN. § 15-78-40
## – WILLIAMSBURG COUNTY

113.    Plaintiff hereby realleges the paragraphs from the introduction through paragraph 33 as though repeated verbatim herein.

114.    Plaintiff brings this action for gross negligence against Defendant Williamsburg County pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10, *et seq*

115.    At all times relevant to the incident alleged in this complaint, Defendant Dollard was operating under the direction and supervision of Williamsburg County Police Dispatch.

116.    Defendant Williamsburg County owed a duty to Robert Langley, including the duty to act in a prudent and reasonable manner with regard to his health and safety, a duty to ensure that Langley, in interacting with certified law enforcement officers remained free from excessive and unlawful force.    Defendant Williamsburg County also owed a ministerial duty to provide responsible and effective dispatch operations, to adequately advise and supervise officers in the field, and to inform and caution officers against operating outside of their jurisdiction or engaging in dangerous conduct.

117.    Upon information and belief, prior to engaging Robert Langley in a high-speed chase, Defendant Dollard was communicating with Defendant Williamsburg County regarding a traffic violation committed by Langley.    Despite having actual or constructive notice that the incident in question was only a minor traffic violation, Defendant Williamsburg County permitted Defendant Dollard to engage Langley in a high-speed pursuit well outside of her jurisdiction.

118.    Defendant Williamsburg County's failure to instruct Defendant Dollard not to enter a high-speed chase in response to a traffic violation, operate outside her jurisdiction, or use excessive force constitutes a breach of Defendant Williamsburg County's duties owed to Robert Langley.

119.    Defendant Williamsburg County knew or should have known of the dangers posed by its failures illustrated in this complaint, including the failure to instruct Defendant Dollard not to pursue Robert Langley at high speed, to instruct Defendant Dollard not to operate outside her jurisdiction, and to instruct Defendant Dollard not to employ deadly force in response to a traffic violation, and that these said actions were reckless and or constituted the total absence of care likely to result in violations of citizens' rights, and as such were reasonably foreseeable.

120.    Defendant Williamsburg County owed a duty to Robert Langley to be reasonable in its law enforcement dispatch operations and to properly advise officers in the field against engaging in dangerous conduct.  Defendant Williamsburg County breached duties owed to Langley by failing to instruct Defendant Dollard not to engage Langley in a high-speed chase, failing to instruct Defendant Dollard not to operate outside her jurisdiction, and failing to instruct Defendant Dollard to not to use deadly force.  Defendant Williamsburg County's failure to adequately instruct and supervise Defendant Dollard resulted in her decisions to engage Langley in a high-speed chase following a traffic violation, and to shoot Langley without first attempting to determine whether Langley was armed.

121.    Defendant Williamsburg County's actions and omissions were unreasonable, constituted the total absence of care, and breached duties owed to Robert Langley, and actually and proximately contributed to and/or caused the death of Langley.

122.    Each incident of force used in this matter constitutes a separate occurrence, including:

    a.    Chasing Robert Langley's vehicle into a ditch; and

    b.    Shooting Robert Langley in the chest and killing him.

123.     Plaintiff is entitled to damages pursuant to the laws of South Carolina and the Constitution of the United States of America, including but not limiting to the following:

      a.      Compensatory, actual, and consequential damages;

      b.      Loss of past and future support and services, companionship, society and support, and the cost of past medical care;

      c.      Loss of future earnings; and

      d.      Any and all other and further relief as this Court may deem appropriate including post-judgment interest.

### COUNT XI
### WRONGFUL DEATH PURSUANT TO S.C. CODE ANN. § 15-51-10 – DEFENDANT WILLIAMSBURG COUNTY

124.     Plaintiff hereby realleges the paragraphs from the introduction through paragraph 33, and paragraph 113 through paragraph 123 as though repeated verbatim herein.

125.     Plaintiff brings this action pursuant to S.C. Code Ann. § 15-51-10, *et seq*. on behalf of the statutory heirs of Robert Langley, for the wrongful death of Mr. Langley, who died on February 6, 2022.

126.     The death of Robert Langley was caused directly and proximately by Defendant Williamsburg County's grossly negligent, reckless, willful and wanton conduct, set forth more fully herein.

127.     As a direct and proximate result of Defendant Williamsburg County's conduct, the beneficiaries of Robert Langley have been damaged, and suffered the loss of Mr. Langley's services, support, income, society, companionship, love, and/or affection

128.    Plaintiff is therefore entitled to a judgment against Defendant Williamsburg County, and for such actual and consequential damages in an amount to be determined by a jury at trial.

**COUNT XII**
**SURVIVAL PURSUANT TO S.C. CODE ANN. § 15-5-90**
**– DEFENDANT WILLIAMSBURG COUNTY**

129.    Plaintiff hereby realleges the paragraphs from the introduction through paragraph 33, and paragraph 113 through paragraph 128 as though repeated verbatim herein.

130.    Robert Langley's estate has incurred funeral and related expenses as a direct and proximate result of the gross negligence, recklessness, willful and wantonness of Defendant Williamsburg County, described herein.

131.    As a direct and proximate result of Defendant Williamsburg County's conduct, set forth more expressly above, Robert Langley suffered grievous bodily injuries, physical pain and suffering, and incurred medical expenses prior to his death, and his estate is entitled to an award of actual damages in an amount to be determined through a trial of this matter.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court award the following damages, jointly and severally against Defendants, as provided by South Carolina law and the United States Constitution, including but not limited to the following:

a.    Compensatory, actual, and consequential damages to Plaintiff;

b.    Costs of this action and attorneys' fees to Plaintiffs for the civil rights causes of action only;

c.    Loss of past and future support and services with interest;

d.    Loss of earnings and/or earning capacity;

25

e.    Punitive damages for the civil rights causes of action only;

f.    Loss to Plaintiff of familial relationship with Robert Langley, love, companionship, comfort, support, society, care, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of the death of Robert Langley; and,

g.    Any and all other and further relief as this Court may deem appropriate.

### **TRIAL BY JURY**

WHEREFORE, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted, this 19th day of April, 2022.

STROM LAW FIRM, LLC

s/ Mario A. Pacella
Bakari T. Sellers (Federal Bar No. 11099)
Mario A. Pacella (Federal Bar No. 7538)
Amy E. Willbanks (Federal Bar No. 13537)
6923 N. Trenholm Road, Suite 200
Columbia, SC 29206
Tel: 803-252-4800
Fax: 803-252-4801
bsellers@stromlaw.com
mpacella@stromlaw.com
awillbanks@stromlaw.com

Malloy Law Firm
Gerald Malloy (Federal Bar No. 5360)
108 Cargill Way
Hartsville, SC 29550
Tel: 843.339.3000
Fax:  803.332.4646
gmalloy@bellsouth.net

Indigo Family Law
Brana Williams (Federal Bar No. 5551)
2055 Glenns Bay Road
Surfside Beach, SC 29578
Tel: 843.438.4536
brana@indigofamilylaw.com